## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT LOUISVILLE

**WILLIAM A. GERBER,**
                    **Plaintiff**

**v.**                                                   Civil Action No.
                                                        3:04CV700-J

**JO ANNE B. BARNHART, Commissioner**
 **Social Security Administration**

### MEMORANDUM OPINION

       This case presents plaintiff William Gerber's challenge to the decision of the Commissioner denying his claim to disability insurance benefits. After examining the materials of record, the arguments of the parties and the applicable authorities, the Court is of the opinion that the decision of the Commissioner should be affirmed.

       Mr. Gerber was previously awarded a closed period of disability from April 9, 1998 to May 11, 1999. He filed an application in July of 2000 alleging that he had been continuously disabled since April 9, 1998. Mr. Gerber appealed an unfavorable decision, and the Honorable Charles R. Simpson, III, remanded the matter for further proceedings. After a second hearing, the Administrative Law Judge ("ALJ") found that Mr. Gerber suffers from severe impairments that prevent him from performing any of his past relevant work. However, the ALJ further found that Mr. Gerber retained the residual functional capacity for the full range of sedentary work.

       The disability determination process consists of five steps. <u>Wyatt v. Secretary</u>, 974 F.2d 680 (6th Cir. 1992). These steps are approached sequentially, and a finding at any step that is adverse to the claimant terminates the process:

    1. The claimant must not be engaged in substantial gainful activity.

    2. The alleged disabling impairment must be "severe," meaning that it significantly limits the individual's ability to do basic work activities necessary for most jobs, such as walking, standing, sitting, lifting, seeing, hearing and speaking. 20 CFR Section 416.921.

    3. If the claimant has a medical condition that meets or exceeds the impairments listed in Appendix 1 of 20 CFR Part 404, Subpart P of the regulations (often referred to as "the Listings"), the evaluation terminates and the claimant is conclusively presumed to be disabled. Lankford v. Sullivan, 942 F.2d 301 (6th Cir. 1991).

    4. The claimant must be unable to do his or her past relevant work.

    5. If the claimant shows inability to do the past relevant work, the Commissioner must come forward with evidence to show that the claimant can still perform a significant number of jobs. Born v. Secretary, 923 F.2d 1168 (6th Cir. 1990).

    If the Commissioner's decision is supported by substantial evidence, the reviewing Court must affirm. Studaway v. Secretary of HHS, 815 F.2d 1074, 1076 (6th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Jones v. Secretary, 945 F.2d 1365 (6th Cir. 1991). The Court's obligation to affirm in such a case exists regardless of whether we would resolve the disputed issues of fact differently, and regardless of whether there exists substantial evidence to support the opposite conclusion. Stanley v. Secretary, 39 F.3d 115 (6th Cir. 1994), Tyra v. Secretary, 896 F.2d 1024 (6th Cir. 1990), Mullen v Brown, 800 F.2d 535, 545 (6th Cir. 1986).

    Mr. Gerber contends that the ALJ erred in failing to comply with Judge Simpson's remand order. Remand was required in part because the previous hearing had included

vocational testimony indicating that plaintiff could perform his previous work; this was erroneous because it was undisputed that plaintiff could not perform his previous job as it was actually performed, regardless of whether he could perform that job title as it was customarily performed. The Appeals Council then entered an order directing the ALJ to "obtain supplemental vocational evidence to clarify whether the claimant can perform his past relevant work; and, if not, whether the claimant can perform alternative jobs in the national economy." Tr. 409. The ALJ was also directed to resolve any conflicts between the vocational expert's testimony and the information provided in the Dictionary of Occupational Titles and the Selected Characteristics of Occupations.

The vocational evidence received at the ensuing hearing addressed the issues of whether Mr. Gerber could perform his past relevant work, and it also addressed his residual functional capacity as that related to specific categories of jobs. Finally, the vocational expert discussed conflicts between the Dictionary of Occupational Titles and her own testimony regarding "sit/stand" options in light jobs. The ALJ complied with the Appeals Council order, which, in turn, complied with the remand order from this Court.

Mr. Gerber's complaint regarding the vocational testimony is that the ALJ did not discuss it in detail. Nonetheless, there is no indication that the ALJ failed to understand or consider the testimony. Mr. Gerber also objects that the ALJ should have discussed light work, which had been an issue at the previous hearing, instead of simply determining that Mr. Gerber could do the full range of sedentary work. The Court disagrees that the ALJ was so bound. The vacation of the previous decision, the remand to the Commissioner, and the order of the Appeals Council all clearly contemplated a new fact-finding procedure. This Court is unable to see any way in

which according the claimant a new hearing, a new opportunity to present any relevant evidence, in any way assaults "the integrity of the appellate system."

Mr. Gerber next objects to ALJ Lawrence's having found in 2004 that Mr. Gerber was capable of the full range of sedentary work, when ALJ Temin found in 2002 that Mr. Gerber was capable of less than a full range of sedentary work. In effect, Mr. Gerber is claiming an issue-preclusive effect for the 2002 decision, and no such legal principle is supportable. The District Court remand order vacated that 2002 decision. It had no continuing effect. There may be situations in which a previous determination is considered controlling on some issue, but this is not one of them. No Appeals Council or District Court decision ever addressed the question of whether the evidence would have supported a greater residual functional capacity than that found by ALJ Temin. This Court's task on review is exactly what it always is: We must determine whether substantial evidence supports the findings of the decision presented for our review, which is the 2004 ALJ Lawrence decision.

Next Mr. Gerber contends that the ALJ erred in failing to find the arthritis of lower back, right hip, and right knee to be severe impairments. The significance of finding an impairment "severe" or "non-severe" is whether the examination of the claimant's circumstances is taken to the next step in the sequential analysis. If any impairment is found severe, the analysis is taken to the next step, such that the mere failure to classify a second impairment severe is irrelevant, so long as the actual impact of that impairment is considered as part of the whole. To the extent plaintiff argues that a finding that a particular impairment is not severe can in itself constitute reversible error, he is incorrect. In Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987), the Court established that there is no error in finding a particular

4

impairment non-severe so long as the effect of that condition is considered in determining whether the claimant "retained sufficient residual functional capacity to allow him to perform substantial gainful activity."

As Mr. Gerber concedes, the ALJ did discuss the effects of a number of "additional complications" (Plaintiff's brief at page 5). The decision clearly considered the effect of these conditions in determining residual functional capacity. Thus, in accordance with Maziarz, whether the ALJ found these individual conditions "severe" or "non-severe" is of no moment.

Finally, Mr. Gerber contends that the ALJ erred in failing to accord the proper weight to the opinions of treating physician Dr. Napier. In August of 2002, Dr. Napier filled out a questionnaire provided him by Mr. Gerber's counsel. He opined that it was medically reasonable that Mr. Gerber would have complaints of pain in his right foot, right knee, right hip and lower back because of misalignment and rotation of the foot. He further opined that Mr. Gerber's pain would interfere with his job performance. Tr. 385. Dr. Napier further opined that Mr. Gerber's "disability is total and permanent." Tr. 386.

It has long been established that the special position occupied by a treating physician calls for his or her opinion to be accorded great weight. While the ALJ is not bound by the opinions of a treating physician, he is required to set forth some basis for rejecting that opinion. Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). There is no error in declining to accept the unsupported conclusory statement of a physician, even a treating physician. Hall v. Bowen, 837 F.2d 272 (6th Cir. 1988); Duncan v. Secretary, 801 F.2d 847 (6th Cir. 1986). While a treating physician's opinion is entitled to great weight, it is not dispositive regarding the ultimate issue of disability.

Landsaw v. Secretary, 803 F.2d 211, 213 (6th Cir. 1986).

An ALJ can give less weight to the opinion if it is not supported by detailed clinical and diagnostic test evidence. Walters v. Commissioner, 127 F.2d 525 (6th Cir. 1997), Jones v. Secretary, 945 F.2d 1365, 1370 (6th Cir. 1991). While, the ultimate determination regarding disability remains with the Commissioner, Houston v. Secretary, 736 F.2d 365, 367 (6th Cir. 1984), the ALJ is not free to simply disregard the clinically and objectively supported opinions of treating physicians on the issue of the claimant's functional restrictions. If the medical opinion of the treating physician is not contradicted, the ALJ must give it complete deference. Walker v. Secretary, 980 F.2d 1066 (6th Cir. 1992).

The allocation of responsibilities as between experts and the Commissioner is clear: The job of the medical expert is to provide medical findings, including the functional impact of identified conditions (e.g., it is proper for a physician to opine that because of specifically named condition, the patient is unable to lift more than twenty pounds frequently); the task of the vocational expert is to provide information concerning the functional requirements of particular jobs; the task of the ALJ is to consider all of this information and make the legal determination, i.e., is the person disabled. Although the Commissioner generally gives more weight to the opinions of treating physicians, a treating physician's opinion regarding disability is not conclusive. See Landsaw v. Secretary of Health and Human Servs., 803 F.2d 211, 213 (6th Cir.1986). The finding of disability is made by the Commissioner, not by a physician. 20 C.F.R. Sec. 404.1527(e)(2). Accordingly, it is appropriate to disregard attempts by a physician to make the legal determination of disability.

Omitting from Dr. Napier's statement his opinion concerning disability, it is clear that his

6

statement does not conflict with the ALJ's determination.  That is, the ALJ accepted that Mr. Gerber would have pain and that it would have an impact on his ability to work.  There is nothing in Dr. Napier's statement which supports Mr. Gerber's claims that he must lie down every day, that he can barely function, and that he is unable to lift any weight greater than a towel.[1]  Furthermore, the ALJ did not err in failing to comment on Dr. Napier's new diagnosis of Type II Diabetes, given that there is no evidence whatsoever that this condition impacts Mr. Gerber's ability to perform work-related tasks.  Tr. 429.

       The Court discerns no legal error and there is substantial evidence to support the decision of the Commissioner.

---

[1] Furthermore, Mr. Gerber's testimony in this regard is inconsistent with his statements that he drives two to three times per week and cares for his personal needs, with the opinion of his former treating physician, and with his report to his present physician in 2004 that he has trouble with his right leg "particularly when he is doing much walking."  Tr. 428.